☑ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>an iPhone assigned the call number (414) )<br>364-0103 ("TARGET CELLULAR DEVICE") – )<br>which is currently in law enforcement possession ) | Case No. 25-1811M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____11/20/2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     11/6/2025 @ 2:25 p.m.

City and state:     Milwaukee, WI     Honorable Nancy Joseph, U.S. Magistrate Judge
*Judge's signature*
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is a BLACK APPLE IPHONE IN A BLACK CASE (**TARGET CELLULAR DEVICE**). The **TARGET CELLULAR DEVICE** is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag, and pictured below.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

All Records on the **TARGET CELLULAR DEVICE** described in Attachment A that relate to violations of Title 18 U.S.C. § 371, conspiracy to commit offense against the United States, Title 18 U.S.C. § 1028(a), fraudulent production of an identification document, and Title 18 U.S.C. § 1343, wire fraud, and involve J. SINGH since January 1, 2019, including:

1.      Correspondence, records, documents, or information, in whatever form, (including electronic mail, messages, photos, images, attachments and other electronic data) pertaining to the Wisconsin Department of Motor Vehicles (DMV), Commercial Driver's Licenses (CDLs), Commercial Learner Permits (CLPs), CDL and CDL applicants, any tests administered by the DMV or Badger CDL, or other third-party test administrators;

2.      Correspondence reflecting identifies, telephone numbers or other contact information for individuals that have contacted J. SINGH regarding, CDLs, CLPs, and WI DMVs;

3.      Correspondence, records, documents, or information in whatever form (including electronic mail, messages, photos, images, attachments and other electronic data) pertaining to use, transfer, or disposition of proceeds of money received from the crimes under investigation;

4.      Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the **TARGET CELLUAR DEVICE(s)** owner;

5.      Evidence indicating the **TARGET CELLUAR DEVICE(s)** owner's state of mind as it relates to the crime under investigation

6.      The identity of the person(s) who communicated with the **TARGET CELLULAR DEVICE(s)** relating to CDLs, CLPs, and WI DMV;

7.      Evidence of user attribution showing who used or owned the **TARGET CELLUAR DEVICE(s)** at the time the things described in this warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8.      Records of Internet Protocol addresses used;

9.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>an iPhone assigned the call number (414) 364-0103<br>("TARGET CELLULAR DEVICE") – which is currently<br>in law enforcement possession | )<br>)<br>)<br>)<br>)<br>)   Case No. 25-1811M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 1343 | Wire Fraud |

The application is based on these facts:

Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Modransky, Special Agent, DOT-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 11/6/2025

*Judge's signature*

City and state:   Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John Modransky, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for a search warrant authorizing the examination of property – an iPhone assigned the call number (414) 364-0103 ("**TARGET CELLULAR DEVICE**") – which is currently in law enforcement possession, further described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am Special Agent with the U.S. Department of Transportation (DOT), Office of Inspector General (OIG) and have been employed since August 2019. I am currently assigned to DOT-OIG's Midwestern Region. As part of my job, I am responsible for investigating various federal crimes, including program fraud, identity theft, wire fraud, and fraudulent statements submitted to the government. I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Academy in Glynco, GA, where I was trained in various law enforcement methods, including physical surveillance, interviewing, computer analysis, and financial analysis. I have also participated in arrest warrants and search warrants of various types of properties. Before joining DOT-OIG, I was employed as an Investigator with the Chicago Public Schools, Office of Inspector General, for approximately four years. The facts set forth in this Affidavit are based on my personal participation in this investigation and from information provided by federal agents, and state partners. I am incorporating my experience, training, and background as a DOT-OIG Special Agent

3.      I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JASPREET SINGH (J. SINGH) participated in a conspiracy to defraud the United States, in violation of the Commercial Motor Vehicle Safety Act of 1978 and Title 18 United States Code § 371, with conspiring to produce fraudulent identification documents, in violation of Title 18 U.S.C. § 1028(a), and with wire fraud, in violation of Title 18 U.S.C. § 1343, between June 10, 2024, and December 10, 2024, in Milwaukee County, in the Eastern District of Wisconsin. There is also probable cause to search the information described in Attachment A for the evidence of these crimes further described in Attachment B.

**IDENTIFICATION OF THE TARGET CELLULAR DEVICE TO BE EXAMINED**

6.      See Attachment A (incorporated by reference).

7.      The applied-for warrant would authorize the forensic examination of the **TARGET CELLULAR DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B (incorporated by reference).

## JURISDICTION

8.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## RELEVANT STATUTES

9.    Title 18, United States Code, Section 1028(a) makes it a federal crime to knowingly produce an identification document without lawful authority, that occurred in or affected interstate commerce. Title 18, United States Code, Section 371 makes it a federal crime to knowingly and intentionally conspire to commit an offense against the United States or to defraud the United States. And Title 18, United States Code, Section 1343, makes it a federal crime to engage in a scheme to defraud using interstate wires.

10.    Additionally, the DOT-OIG is a federal agency of the United States and was created by the Inspectors General Act of 1978. Matters related to commercial driver's license (CDL) and commercial learner's permit (CLP) requirements pertaining to testing and fraud prevention fall under the jurisdiction of the United States pursuant to the Commercial Motor Vehicle Safety Act of 1986, which mandates that states adopt uniform standards for testing and licensing, detailed in 49 Code of Federal Regulations (CFR) Part 383, by the Federal Motor Carrier Safety Administration, along with 49 CFR Part 384, and 49 U.S.C. § 31305.

11.    In Wisconsin, the Wisconsin Department of Transportation (WisDOT) through its Division of Motor Vehicles (DMV) regulates CDLs and CLPs.  WisDOT ensures that CDL and CLP holders meet federal and state requirements for driving commercial vehicles, including medical fitness, knowledge and skills, and compliance with traffic laws. Wisconsin (Wis.) Statute

(Stat.) § 343 governs driver licenses, addressing who needs one, the different types, and the rules for obtaining and maintaining them. Section 342.02 of Wis. Stat., governing operator's license, requires that its rules align with and be at least as strict as the standards set by the federal Commercial Motor Vehicle Safety Act (49 U.S.C. 31301 to 31317) and the regulation adopted under that act. This means Wisconsin regulations for operator's licenses to include commercial motor vehicles (CMV), must follow the definitions and requirements outlined in 49 U.S.C. § 31301 and related federal law.

12.     49 U.S.C. § 31301 establishes definitions for CDLs, CLPs, and CMVs. These include defining a CDL and CLP as a state-issued license permitting the operation of a CMV as a vehicle used in commerce for transporting people and property.

13.     49 U.S.C.§ 31301 sets the fundamental definitions for CDLs, CLPs, and CMVs, and Wis. Stat. § 343 incorporates and must adhere to these federal standards in its management of driver's license regulations to include CMVs. The issuance of CDLs and CLPs by states is primarily governed by 49 CFR Part 383 and 49 CFR Part 384.

14.     49 CFR Part 383 establishes the federal standards for CDLs and CLPs, including requirements for knowledge and skills tests, license endorsements, and general CDL and CLP requirements. Specifically, 49 CFR 383.23 addresses the CDL and CLP, stating that no person shall operate a CMV without a CDL or CLP meeting federal standards. To comply with Part 383.23, drivers must have passed knowledge and driving tests aligning with federal standards (subparts F, G, and H of Part 383) for the specific CMV the driver will operate. Subpart F (Vehicle Groups and Endorsements) defines the different classifications of commercial motor vehicles and the endorsements (e.g. hazardous materials, passenger, or school bus) that drivers need, Subpart G (Required Knowledge and Skills) defines the specific knowledge and skills that drivers must

demonstrate to obtain a CDL an CLP, Subpart H (Test Standards) outlines the minimum standards that state-administered knowledge and skills tests must meet, and Subpart J (Licensing Procedures) address the procedures for issuing and managing CDLs and CLPs. A driver must possess a valid CDL from their state or jurisdiction of domicile that meets the standards in subpart J of Part 383. Furthermore, the CDL must be issued by the driver's state or jurisdiction of domicile.

15.    49 CFR Part 384 details the requirements for states to achieve and maintain substantial compliance with the federal CDL and CLP program. It covers areas to include CDL and CLP issuance procedures, information management, and data sharing.

16.    49 U.S.C. § 31305 establishes minimum standards for written and driving tests for CMV operators. The tests are required for those operating or intending to operate CMVs in a vehicle representative of the type they will drive. The standards can vary for different CMV classes and must include minimum passing scores. The tests aim to ensure operators understand safe CMV operation regulations and vehicle safety systems.

**PROBABLE CAUSE**

17.    According to a Confidential Human Source (CHS),[1] since approximately 2019, he/she had worked with other conspirators to help numerous paid customers obtain their CDLs through fraudulent means. According to the CHS, members of the conspiracy including the CHS and J. SINGH, would recruit potential customers or clients who would pay the conspirators a fee to obtain their CDLs through fraudulent means, i.e., without having to study for the knowledge portion of the CDL exam, and without having to demonstrate the necessary skills on the driving

---

[1] According to a law enforcement database, CHS criminal history includes the following: (1) a January 2015 arrest for false swearing (non-criminal) (WI Statue § 946.32) which was dismissed; (2) a March 2015 arrest for possession of child pornography (WI Statue § 948.12) which was also dismissed; and (3) a February 2018 felony conviction for making threats to communicate derogatory information (WI Statue § 943.31). CHS served a sentence of probation for this conviction. CHS has not been compensated for information he/she has provided.

portion of the exam. For a fee, the CHS (or others) would help the clients cheat on the knowledge portion of the exam to obtain their CLP. Then, other members of the conspiracy would help the customers pass the driving portion of the exam without having to demonstrate mastery of the necessary skills. Each member of the conspiracy would receive a portion of the fee paid by the client or customer.

18.     On or about February 15, 2024, law enforcement made contact with the CHS, after which the CHS agreed to assist law enforcement in investigating the conspiracy ring. Even after CHS began working with law enforcement, which was unknown to J. SINGH, J. SINGH continued to make contact with CHS to see if J. SINGH could continue to help clients obtain their CDL's with the assistance of CHS and others. J. SINGH made contact with the CHS via telephone (cell phone).

19.     Special agents with DOT-OIG and the FBI conducted a series of undercover operations in which the CHS would assist clients brought to him/her by J. SINGH by helping them cheat on the knowledge exam. A person with a CLP cannot operate as a trucker on their own until they receive their CDL. These operations were conducted in conjunction with the Wisconsin Department of Transportation. None of the operations resulted in the issuance of a CDL by WisDOT. And following the operations, all CLPs were cancelled by WisDOT.

20.     Between June 10, 2024, and December 10, 2024, J. SINGH and the CHS engaged in a series of recorded phone conversations discussing clients of J. SINGH that sought to obtain their CDLs and CLPs through fraudulent means. J. SINGH found and/or recruited the clients who wished to obtain their CDLs through fraudulent means.

21.     J. SINGH then arranged for these clients to take the knowledge portion of the exam with the CHS's assistance. The CHS's method in helping the clients cheat on their CLP test was to

have the clients wear a turban concealing Bluetooth in-ear headphones, which played the test questions through over-ear headphones worn on top of the clients' turbans. The CHS would listen to the questions remotely and provide the clients with the corresponding answers.[2] See picture below.



**Pictured above is B. Singh taking the knowledge portion of the CLP exam.**

22.     The CHS claimed that WI DMVs allowed assisted listening devices to test takers who had a limited understanding of English. Additionally, J. SINGH told the CHS that he wanted 40% of the payment from all clients that were referred to the CHS.

23.     After passing the knowledge portion of the exam through fraudulent means, J. SINGH would then arrange for the clients to pass the driving portion of the exam as well. For assisting clients in helping them obtain their CDL through fraudulent means, the clients would pay the conspirators a fee. Sometimes the client would pay J. SINGH, who would share the proceeds with other conspirators, including the CHS for his role in assisting with the knowledge portion of

---

[2] According to the CHS, he/she had knowledge of the answers because he/she had taken and passed the CLP exam.

the exam. Other times, the client would pay the CHS, who would then share the proceeds with J. SINGH. It is unknown precisely how J. SINGH would assist clients in passing the driving portion of the exam to obtain their CDL.

24.     DOT-OIG Special Agents, along with FBI agents, conducted undercover operations in which J. SINGH would bring clients to CHS for the knowledge portion of the exam.  During these operations, J. SINGH recruited and brought four (4) clients to the CHS.  Following each exam, the CHS and J. SINGH shared the proceeds paid by the client (who would pay either the CHS or J. SINGH directly). After one of the operations, J. SINGH was paid by the customer, who shared the proceeds with the CHS via electronic payment (CashApp).  After the other three operations, the customer paid the CHS, who shared the proceeds with J. SINGH by cash payments, which were surveilled and recorded by federal agents.

25.     On October 16, 2025, law enforcement personnel obtained a signed arrest warrant for J. SINGH from U.S. District Court for the Eastern District of Wisconsin. *See United States v. Jaspreet Singh,* 25-M-542 (SCD).

26.     Singh is a native of the county of India. He has a pending asylum claim in the U.S. In October 2025, U.S. Immigration and Customs Enforcement ("ICE") sent a letter to J. SINGH to appear for an immigration related meeting at the U.S. Citizenship and Immigration Services building in Milwaukee, Wisconsin. On October 16, 2025, J. SINGH did not appear for his scheduled meeting with ICE. ICE contacted J. SINGH at the SUBJECT ACCOUNT to inquire about J. SINGH's whereabouts; however, there was no answer.

27.     On October 24, 2025, law enforcement arrested J. SINGH at an apartment building located at 8900 S. Wood Creek Drive, Apt. 204, Oak Creek, WI 53154. J. SINGH's mobile phone **(TARGET CELLULAR DEVICE)**, was seized pursuant to his arrest.

28.     On October 24, 2025, law enforcement interviewed J. SINGH at a Milwaukee County Jail, located at 949 N. 9th Street, Milwaukee, WI 53233.  During the interview, J. SINGH told law enforcement that he had contact information saved on his phone related to associates believed to be involved in the aforementioned WI DMV CDL test cheating scheme.

## **TECHNICAL TERMS**

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.

Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      d.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-

processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/, I know that the **TARGET CELLULAR DEVICE** has capabilities that allow it to serve as a wireless telephone, digital camera, GPS navigation device, tablet, pager, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

32.     There is probable cause to believe that things that were once stored on the **TARGET CELLULAR DEVICE** may still be stored there, for at least the following reasons:

a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active

file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

33.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET CELLULAR DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET CELLULAR DEVICE** because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET CELLULAR DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

35.     *Manner of execution.* Because this warrant seeks only permission to examine the **TARGET CELLULAR DEVICE** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

36.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGE CELLUAR DEVICE** described in Attachment A to seek the items described in Attachment B.

<u>**ATTACHMENT A**</u>

The property to be searched is a BLACK APPLE IPHONE IN A BLACK CASE (**TARGET CELLULAR DEVICE**). The **TARGET CELLULAR DEVICE** is currently located at the Federal Bureau of Investigation and Evidence Room, 3600 S. Lake Drive, St Francis, WI 53235, contained in an evidence bag, and pictured below.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

All Records on the **TARGET CELLULAR DEVICE** described in Attachment A that relate to violations of Title 18 U.S.C. § 371, conspiracy to commit offense against the United States, Title 18 U.S.C. § 1028(a), fraudulent production of an identification document, and Title 18 U.S.C. § 1343, wire fraud, and involve J. SINGH since January 1, 2019, including:

1.  Correspondence, records, documents, or information, in whatever form, (including electronic mail, messages, photos, images, attachments and other electronic data) pertaining to the Wisconsin Department of Motor Vehicles (DMV), Commercial Driver's Licenses (CDLs), Commercial Learner Permits (CLPs), CDL and CDL applicants, any tests administered by the DMV or Badger CDL, or other third-party test administrators;

2.  Correspondence reflecting identifies, telephone numbers or other contact information for individuals that have contacted J. SINGH regarding, CDLs, CLPs, and WI DMVs;

3.  Correspondence, records, documents, or information in whatever form (including electronic mail, messages, photos, images, attachments and other electronic data) pertaining to use, transfer, or disposition of proceeds of money received from the crimes under investigation;

4.  Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the **TARGET CELLUAR DEVICE(s)** owner;

5.  Evidence indicating the **TARGET CELLUAR DEVICE(s)** owner's state of mind as it relates to the crime under investigation

6.  The identity of the person(s) who communicated with the **TARGET CELLULAR DEVICE(s)** relating to CDLs, CLPs, and WI DMV;

7.  Evidence of user attribution showing who used or owned the **TARGET CELLUAR DEVICE(s)** at the time the things described in this warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8.    Records of Internet Protocol addresses used;

9.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.